# EXHIBIT 2

earing Date: 5/26/2022 10:00 AM
ocation: Court Room 2601
udge: Mitchell, Raymond W.

**12-Person Jury**

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT - CHANCERY DIVISION**

FILED
1/20/2022 9:43 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH00455
Calendar, 2
16367451

|  |  |
|---|---|
| KATHERINE M. ATKINS and ZANE FULTON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **Case No.** |
| v. | |
| NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM, and REALMANAGE LLC d/b/a AMERICAN COMMUNITY MANAGEMENT, | **Jury Trial Demanded** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs KATHERINE M. ATKINS ("Atkins") and ZANE FULTON ("Fulton") (collectively, "Plaintiffs"), individually and on behalf of a Class (defined *infra*) of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendants NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM ("HomeWiseDocs") and REALMANAGE LLC d/b/a AMERICAN COMMUNITY MANAGEMENT ("RealManage") (collectively, "Defendants"), and based upon personal knowledge of the facts pertaining to their own experiences, and upon on investigation, information, and belief as to all other allegations, allege as follows:

### NATURE OF THE CASE

1.      Defendants have turned an Illinois law designed to ensure transparency in condominium sales transactions into a cash cow at the expense of the condominium owners Defendants are supposed to serve. Defendants force sellers of condominium units to pay

unreasonable and excessive fees for certain documents and information that sellers are required by law to provide to potential buyers.

2.      Defendants' conduct violates Section 22.1 ("Section 22.1") of the Illinois Condominium Property Act (the "Condo Act"), 765 ILCS 605/22.1, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* Plaintiffs and Class members have rights of action under those laws, and under the common law for civil conspiracy and unjust enrichment.

3.      Section 22.1 provides that in the event of any resale of a condominium unit by a unit owner other than the developer, the owner shall obtain nine categories of documents and information relating to the condominium association, such as the declaration, by-laws, liens, and anticipated capital expenditures from the Condo Board of Managers, and provide them to the prospective buyer. Section 22.1(c) provides that "[a] reasonable fee covering the ***direct out-of-pocket cost*** of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." (Emphasis added).

4.      However, Defendants' fees significantly exceed what is reasonable as direct out-of-pocket costs for providing and copying such information.

5.      Specifically, Defendants charged each Plaintiff and Class member $435.00 (or more) in fees to obtain what Defendants identified as a "22.1 and Paid Assessment Letter Bundle" ("Documentation Bundle")—which included a "Paid Assessment Letter"—from Plaintiff's and Class members' respective Condominium Associations.  *See,* Atkins's Paid Assessment Letter, attached hereto as <u>Exhibit 1</u>; Fulton's Paid Assessment Letter, attached hereto as <u>Exhibit 2</u>.

6.      $435.00 is an amount that greatly exceeded Defendants' reasonable direct out-of-pocket costs for copying and providing each of the Documentation Bundles.

7.     Plaintiffs bring this class action lawsuit to obtain reimbursement for the unconscionable fees that Defendants charged and continue to charge, and to enjoin Defendants from continuing their unlawful and unfair conduct that violates the Condo Act and ICFA, and which constitutes common law civil conspiracy and unjust enrichment.

**PARTIES, JURISDICTION, AND VENUE**

8.     Atkins is a citizen of Illinois who resided in DuPage County during the relevant time period. Atkins is a former owner of a condominium unit in Turnberry Manor Condominium Association, located in Roselle, Illinois ("Turnberry").

9.     Fulton is a citizen of Illinois who resided in DuPage County during the relevant time period. Fulton is a former owner of a condominium unit in Williamsport Village Condominium Association, located in Westmont, Illinois ("Williamsport").

10.     RealManage is a Delaware limited liability company with its principal place of business at 6400 International Parkway, Suite 1000, Plano, Texas. RealManage is engaged in the business of community and condominium association management throughout the United States and in Cook County, Illinois. RealManage maintains an office at 220 North Green Street, Suite 2028, Chicago, Illinois.

11.     RealManage is the management company and agent of Turnberry and Williamsport, as well as many other Illinois Condominium Associations. RealManage does business in Illinois under the name American Community Management.

12.     HomeWiseDocs is a California corporation with its principal place of business at 5520 Kietzke Lane, Suite 200, Reno, Nevada.

13.     Personal jurisdiction over Defendants is based on 735 ILCS 5/2-209(a)(1), (a)(2), and (a)(7) because Defendants transact business within Illinois, Defendants' tortious acts and

omissions giving rise to Plaintiffs' claims took pace in Illinois, and this lawsuit arises out of a contract or promise substantially connected to Illinois.

14.     Venue is proper under 735 ILCS 5/2-101 because a substantial part of the acts and omissions giving rise to Plaintiffs' and Class members' claims occurred in this County, and because, pursuant to 735 ILCS 5/2-102(c), RealManage is a resident of Cook County, Illinois.

## FACTUAL AND LEGAL BACKGROUND

### *The Provisions of Section 22.1*

15.     Section 22.1(a) of the Condo Act provides:

> In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand, the following:
>
> (1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations.
>
> (2) A statement of any liens, including a statement of the account of the unit setting forth the amounts of unpaid assessments and other charges due and owing as authorized and limited by the provisions of Section 9 of this Act or the condominium instruments.
>
> (3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years.
>
> (4) A statement of the status and amount of any reserve for replacement fund and any portion of such fund earmarked for any specified project by the Board of Managers.
>
> (5) A copy of the statement of financial condition of the unit owner's association for the last fiscal year for which such statement is available.
>
> (6) A statement of the status of any pending suits or judgments in which the unit owner's association is a party.
>
> (7) A statement setting forth what insurance coverage is provided for all unit owners by the unit owner's association.

(8) A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments.

(9) The identity and mailing address of the principal officer of the unit owner's association or of the other officer or agent as is specifically designated to receive notices.

765 ILCS 605/22.1(a).

16.     The purpose of Section 22.1 is "to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit [being purchased]." *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 39.

17.     Section 22.1 "impos[es] 'substantial obligations on sellers to secure the provision of certain documents from management, but in turn offers them a shred of protection against price-gouging.'" *Channon v. Westward Mgmt., Inc.*, 2021 IL App (1st) 210176, ¶ 7 (quoting Circuit Court opinion).

18.     Because the purpose of Section 22.1 is to facilitate real estate transactions, it also allocates the costs of providing the information to the buyer by providing that: "a reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 22.1(c).

19.     Section 22.1 allows only for "***direct out-of-pocket costs***" for providing and copying the documents. (emphasis added). Fees that exceed direct out-of-pocket costs are unreasonable under the statute. *See, Channon*, 2021 IL App (1st) 210176 at ¶ 22 ("The fact that the General Assembly chose to specify that only a direct out-of-pocket charge would be considered reasonable

is especially indicative of a legislative intent to protect unit sellers needing to obtain this information.").

20.    Since Section 22.1 imposes the limitation that the fee be only for "reasonable," "direct" "out-of-pocket costs," the fees can only be for "providing" and "copying" the documents and not, for instance, storing or maintaining such information. *See, Channon*, 2021 IL App (1st) 210176 at ¶ 22. Indeed, such indirect, overhead costs are incident to Defendants' normal duties as agents and subagents of the Condominium Associations they serve because the documents must be maintained and preserved as a matter of course. *See, e.g.*, 765 ILCS 605/19(a)(1)–(9). Accordingly, Section 22.1 prohibits Defendants from defraying costs of storage, updating, organization, and maintenance of such information because such overhead costs would not be directly attributable to providing the documents to the seller or copying them. *See, Channon*, 2021 IL App (1st) 210176 at ¶ 22.

21.    Simply put, Section 22.1 prohibits Defendants from turning the Condo Act's disclosure requirements into a revenue source for Defendants or for others.

### *Management Companies Act as Authorized Agents of Condominium Associations With Respect to Section 22.1 Disclosures*

22.    Community association management companies (collectively, "Management Companies"), such as RealManage, act on behalf of, and as agents for, condominium associations across Illinois (collectively, "Condominium Associations").

23.    In general, Management Companies are responsible for performing management duties on behalf of Condominium Associations, including providing Section 22.1 disclosures.

24.    For example, according to www.realmanage.com,[1] the following list illustrates some of RealManage's tasks and duties:

---

[1] https://www.realmanage.com/condominium-management-services.

> Manage the association within budget

> Help the board to keep the residents informed and satisfied

> Provide access to pertinent community information

> Project planning and management

> Help the board effectively govern the community

> Help the board to build a strong sense of community

> Help to enforce the covenants and restrictions fairly and consistently

> Foster great vendor relationships

> Be a well-rounded resource for challenges the association may face

> Unique management technique, starting with finding good leaders

> Long term success for the property and your residents

25.     RealManage also offers to provide a panoply of professional services to Condominium Associations, including persons with credentials of LSM, PCAM, CMCA, AMS, CPAs, and degreed accountants.

26.     At all relevant times, RealManage was Turnberry's and Williamsport's agent for condominium association management duties, including providing Section 22.1 disclosures.

27.     In addition to Turnberry and Williamsport, RealManage has an identical relationship with other Condominium Associations in Illinois.

28.     Other Management Companies—to be identified through discovery—have identical relationships with other Condominium Associations in Illinois as RealManage has with Turnberry and Williamsport.

29.     Turnberry, Williamsport, and other Condominium Associations specifically designated and delegated to RealManage and other Management Companies the duties under

Section 22.1 to provide the information and copies of documents upon request to sellers pursuant to Section 22.1(b), which states that "the principal officer of the unit owner's association or such other officer as is specifically designated shall furnish the [Section 22.1 disclosures] when requested to do so in writing."

30. In other words, RealManage and other Management Companies were authorized to act on behalf of the Condominium Associations and their Boards of Managers in connection with the storage, maintenance, and recordkeeping practices of the documents and information referenced in Section 22.1, which were required as a matter of course.

31. By actual authority (express or implied), RealManage and the other Management Companies were agents of the Condominium Associations in Illinois, and they acted on behalf of Condominium Associations and their Boards of Managers in connection with performing the Condominium Associations' obligations under Section 22.1, for purposes of providing the Section 22.1 disclosures to Plaintiffs and Class members, and for assessing fees only as permitted by Section 22.1.

### *HomeWiseDocs Acts as Subagent of Condominium Associations With Respect to Section 22.1 Disclosures*

32. Acting on behalf of their respective Condominium Associations, RealManage and certain other Management Companies (collectively, the "Portal-Using Management Companies") utilize services offered by HomeWiseDocs, which provides Portal-Using Management Companies with cloud storage and an online portal for maintaining and accessing Section 22.1 documents. In fact, according to a recent press release, "HomeWiseDocs has over 1,300 community association customers with over nine million housing units."[2]

---

[2] https://www.realpage.com/news/realpage-agrees-to-acquire-homewisedocs/.

33.     On information and belief, Portal-Using Management Companies, including RealManage, have contracts with HomeWiseDocs, allowing them to upload, store, and maintain documents incident to their management obligations and duties, including the documents listed in Section 22.1, on HomeWiseDocs's online portal.

34.     Pursuant to the agreements between Portal-Using Management Companies (such as RealManage) and HomeWiseDocs—and as specifically approved, agreed, and authorized by the Condominium Associations represented by these Portal-Using Management Companies— Portal-Using Management Companies can upload and maintain all of the documents they create, update, reference, preserve, and store on behalf of the Condominium Associations under their management as necessary to carry out their duties as community association management companies. *See, e.g.*, 765 ILCS 605/19.

35.     By actual authority (express or implied), RealManage and the other Portal-Using Management Companies were agents of the Condominium Associations in Illinois when they utilized HomeWiseDocs's services in connection with the storage, maintenance, and recordkeeping practices of the documents and information referenced in Section 22.1, which were required as a matter of course.

36.     By actual authority (express or implied), HomeWiseDocs was Turnberry's, Williamsport's, and the other Condominium Associations' authorized subagent in connection with the storage, maintenance, and recordkeeping practices of the documents and information referenced in Section 22.1.

37.     Through HomeWiseDocs's cloud-based portals, Portal-Using Management Companies make Section 22.1 disclosures available to sellers (and sellers' agents) via the Internet.

38.     Sellers or the sellers' agents can obtain an electronic copy of Section 22.1 disclosures by searching for and placing an order for them through HomeWiseDocs's online portal, and the documents are delivered over the Internet to the sellers' designated email address in an electronic file.

39.     As such, at no additional cost to the Portal-Using Management Companies or HomeWiseDocs, condominium owners and owners' sales agents can gain access to the HomeWiseDocs online portal to obtain certain documents for purposes of meeting the owners' obligations to potential buyers under Section 22.1.

40.     Pursuant to the agreements between Portal-Using Management Companies (such as RealManage) and HomeWiseDocs—and as specifically approved, agreed, and authorized by the Condominium Associations that are represented by these Portal-Using Management Companies—Portal-Using Management Companies specifically designated and delegated to HomeWiseDocs the duties under Section 22.1 to provide copies of the documents to sellers pursuant to Section 22.1(b).

41.     In fact, RealManage's website touts its technological capacities, which include "Cloud-based Board, Resident, Closing and Attorney Portals," and access to "Online payments, bank reports, balances and documents."[3] On information and belief, these services are provided to RealManage by HomeWiseDocs. As such, RealManage represents HomeWiseDocs's services as its own.

42.     Accordingly, by actual authority (express or implied), HomeWiseDocs was the agent of RealManage and the other Portal-Using Management Companies in connection with providing Section 22.1 disclosures through its online portal.

---

[3] https://www.realmanage.com/condominium-management-services.

43.     In turn, by actual authority (express or implied), HomeWiseDocs was Turnberry's, Williamsport's, and the other Condominium Associations' authorized subagent in connection with performing the Condominium Associations' and the Boards of Managers' obligations under Section 22.1, for purposes of providing the Section 22.1 disclosures to Plaintiffs and Class members, and for assessing fees only as permitted by Section 22.1.

### Obtaining Section 22.1 Disclosures from Defendants

44.     Turnberry, Williamsport, and other Condominium Associations fulfill their duties under Section 22.1 through their agents, RealManage and the other Portal-Using Management Companies.

45.     In turn, RealManage and the other Portal-Using Management Companies—acting on behalf of Turnberry, Williamsport, and other Condominium Associations—fulfill their duties under Section 22.1 through their agent, HomeWiseDocs.

46.     Acting as subagent for Turnberry, Williamsport, and other Condominium Associations, HomeWiseDocs allows condominium owners and owners' sales agents to gain access to the HomeWiseDocs online portal to obtain certain documents for purposes of meeting the owners' obligations to potential buyers under Section 22.1. These Section 22.1 disclosures are delivered over the Internet to the sellers' designated email address in an electronic file.

47.     When condominium owners and owners' sales agents gain access to the HomeWiseDocs online portal to obtain the documentation necessary to satisfy their obligations to potential buyers under Section 22.1, it comes at no additional cost to the Portal-Using Management Companies, HomeWiseDocs, or Condominium Associations.

48.     Although Defendants incur essentially zero direct out-of-pocket costs for providing the electronic file containing the Section 22.1 disclosures to condominium owners and owners'

sales agents, condominium owners and owners' sales agents are still required to first purchase a license from HomeWiseDocs in order to access the HomeWiseDocs online portal.

49.     According to HomeWiseDocs, it grants licenses to access its cloud-based portals to users—including association managers, unit owners, and lenders—who register for an account and pay certain fees. This license consists of a "non-exclusive, non-sublicensable, non-assignable license to use the HWD [HomeWiseDocs] Service for the sole purpose of a) obtaining, providing, downloading, or reviewing Content for your use directly or in connection with a particular transaction; or b) uploading or providing data or Content for use by Registered Users as part of the HWD Service."[4]

### Plaintiffs and Class Members Paid Unreasonably Excessive Fees to Defendants for Providing Section 22.1 Disclosures

50.     As explained above, Defendants' actual direct out-of-pocket costs for copying and providing the Documentation Bundles—as required by Section 22.1—to Plaintiffs and Class members were minimal, if extant.   Indeed, the Documentation Bundles obtained by Plaintiffs and Class members were provided over the Internet in electronic files, which essentially represents a zero-dollar direct cost to Defendants.

51.     Nevertheless, Defendants charged Plaintiffs and Class members $435.00 (or more) to obtain the Documentation Bundles.  *See,* Exhibits 1 and 2.

52.     Defendants' actual direct out-of-pocket costs for copying and providing the Documentation Bundles were substantially less than the $435.00 fee that Plaintiffs and Class members were charged.

---

[4] HomeWiseDocs Website Terms of Use and End User License Agreement, available at https://homewisedocshelp.zendesk.com/hc/en-us/articles/360017810131.

53.     Pursuant to agreements delegating the duties of the Condominium Associations and their Boards of Managers to HomeWiseDocs through the Management Companies—such as RealManage in Plaintiffs' case—HomeWiseDocs was the only source of the Section 22.1 disclosures for Plaintiffs and Class members. As such, HomeWiseDocs provided the only means for Plaintiffs and Class members to fulfill their statutory obligations under Section 22.1 to make disclosures to potential buyers.

54.     Since Section 22.1 requires sellers of condominium units to provide prospective buyers with these disclosures, Plaintiffs and Class members had no choice but to pay the excessive and unreasonable fees imposed by Defendants.

55.     Defendants seize upon the complexities of a real estate sales transaction, the relative lack of specialized knowledge of ordinary sellers regarding the transactions, the statutory obligations of the sellers under Section 22.1, and the importance of the deadlines in such deals to charge excessive fees, reap unearned and ill-gotten windfalls, and use Section 22.1—a device designed to facilitate transparency—to add transaction costs. Because condominium sellers are required to provide the documents to the buyers and the sellers are highly motivated to sell their property by the time the disclosures must be provided, sellers have no choice but to pay the fees imposed by Defendants.

56.     If, at the time of the transaction, Plaintiffs and Class members could ensure that the prospective buyer would keep the offer to buy open until the dispute over the reasonableness of the Documentation Bundle fees was resolved, Plaintiffs and Class members would not pay the fees charged by Defendants. This is impossible as a practical matter, however. As such, sellers have no choice but to pay the excessive fees in order to timely comply with their own legal obligations to the prospective buyers who rightfully demand the Section 22.1 disclosures be provided.

57.     Since Plaintiffs and Class members had no other alternatives or means of accessing the documents containing the Section 22.1 disclosures, and they could not have sold their properties without providing the documents to potential buyers, they paid the excessive fees charged by Defendants under duress.

### FACTS RELEVANT TO PLAINTIFFS

58.     In 2021, Atkins sought to sell her condominium unit in Turnberry.

59.     As required by Section 22.1, Atkins obtained a Documentation Bundle from Defendants.

60.     Atkins's Documentation Bundle included a Paid Assessment Letter, which shows that it was issued by American Community Management (*i.e.*, RealManage) on behalf of Turnberry. *See*, Exhibit 1.

61.     According to Atkins's Paid Assessment Letter, Atkins was assessed a $435.00 fee to obtain her Documentation Bundle, a $6.00 "Convenience Fee," and a $50.00 "Rush Fee." *See* Exhibit 1. In total, Atkins paid $491.00 in connection with her Documentation Bundle. *Id.*

62.     Atkins's credit card statement identifies the payee of this $491.00 fee as "HOMEWISEDOCS 866-9255004 NV," which is HomeWiseDocs.

63.     Atkins had no other alternatives or means of acquiring her Documentation Bundle, and she could not have sold her property without providing this documentation to the potential buyer of her property.

64.     Since Atkins had no choice but to pay the excessive fees in order to timely comply with her legal obligations to the prospective buyer of her property, she paid the excessive fees charged by Defendants under duress.

65.     In 2021, Fulton sought to sell his condominium unit in Williamsport.

66.     As required by Section 22.1, Fulton obtained a Documentation Bundle from Defendants.

67.     Fulton's Documentation Bundle included a Paid Assessment Letter, which shows that it was issued by American Community Management (*i.e.*, RealManage) on behalf of Williamsport. *See*, Exhibit 2.

68.     According to Fulton's Paid Assessment Letter, Fulton was assessed a $435.00 fee to obtain his Documentation Bundle, a $6.00 "Convenience Fee," and a $50.00 "Rush Fee." *See* Exhibit 2. In total, Fulton paid $491.00 in connection with his Documentation Bundle. *Id*.

69.     Fulton's credit card statement identifies the payee of this $491.00 fee as "HOMEWISEDOCS 866-9255004 NV," which is HomeWiseDocs.

70.     Fulton had no other alternatives or means of acquiring his Documentation Bundle, and he could not have sold his property without providing this documentation to the potential buyer of his property.

71.     Since Fulton had no choice but to pay the excessive fees in order to timely comply with his legal obligations to the prospective buyer of his property, he paid the excessive fees charged by Defendants under duress.

## CLASS ALLEGATIONS

72.     Plaintiffs bring this action under 735 ILCS 5/2-801, on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All persons in Illinois who paid a fee to HomeWiseDocs for obtaining documents for the purpose of providing them to a prospective buyer as required under 765 ILCS 605/22.1(a).

73.     In addition, Plaintiffs bring this action under 735 ILCS 5/2-801, on behalf of a subclass of similarly situated individuals and entities (the "RealManage Subclass"), defined as follows:

> All persons in Illinois who paid a fee to HomeWiseDocs for obtaining documents for the purpose of providing them to a prospective buyer as required under 765 ILCS 605/22.1(a), in connection with a condominium unit in a condominium association managed by RealManage.

74.     Excluded from the Class and the RealManage Subclass are Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest; the Judge to whom this case is assigned and the Judge's immediate family; any person who executes and files a timely request for exclusion from the Class or the RealManage Subclass; any person who has had their claims in this matter finally adjudicated and or otherwise released; and the legal representatives successors, and assigns of any such excluded person.

75.     The Class is so numerous that joinder of individual members would be impracticable. According to RealManage's website, RealManage manages Condominium Associations in seven Illinois counties and more than eleven municipalities, including Chicago, Aurora, Elgin, Joliet, Naperville and other places, many of which are the most populous cities and towns in Illinois.[5] Moreover, as noted above, RealManage is just one of approximately 1,300 condominium association management companies that use HomeWiseDocs.[6]

76.     There are several questions of law and fact common to the claims of Plaintiffs and the members of the Class, and those questions predominate over any questions that may affect

---

[5] https://www.realmanage.com/office-locations/illinois/.
[6] https://www.realpage.com/news/realpage-agrees-to-acquire-homewisedocs/.

individual Class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to:

(a)     whether Defendants' fees exceed their direct out-of-pocket costs for providing and copying the information under Section 22.1,

(b)     whether Plaintiffs and Class members paid the fee,

(c)     what is the amount of a reasonable fee for Defendants' direct out-of-pocket costs for providing and copying Section 22.1 documents, and

(d)     the measure of damages and other remedies available to Plaintiffs and Class members for Defendants' violations of Illinois law.

77.     Plaintiffs' claims are typical of the claims of the Class members and are based on the same operative facts and legal theories.

78.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex consumer and class action litigation. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

79.     A class action can best secure the economies of time, effort and expense, and promote uniformity. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, particularly in light of the relatively small value of their claims. Individual actions are not feasible and it is unlikely that individual members of the Class will prosecute separate actions. Even then, if individual Class members were to prosecute separate actions, then there would be a risk of

inconsistent or varying adjudications with respect to individual Class members. The trial and the litigation of Plaintiffs' claims as a class action will be manageable.

**COUNT I**
**Violation of the Illinois Condominium Property Act**
**(765 ILCS 605/22.1)**
***(On Behalf of Plaintiffs, the Class, and the RealManage Subclass***
***and Against All Defendants)***

80.     Plaintiffs repeat and reallege paragraphs 1-79 as if fully set forth herein.

81.     Defendants violated Section 22.1(c) by assessing, charging, and collecting unlawful, excessive, and unreasonable fees for providing and copying Section 22.1 information and documents. The fees Defendants charged greatly exceeded their direct out-of-pocket costs for providing and copying the information and documents.

82.     Defendants required Plaintiffs and Class members to pay these unlawful fees, and Plaintiffs and Class members were harmed when they paid the fees.

83.     Plaintiffs and Class members had no reasonable alternative but to pay the fee because the fee is part of a highly complex real estate transaction. Even if the excessiveness of the fee were appreciated and understood by Plaintiffs and Class members, the circumstances, including the time constraints and critical nature of the information, as a practical matter forced Plaintiffs and Class members to pay the fee under duress in order not to lose the prospective buyers and timely produce the required information to fulfill their legal obligations to the buyers.

84.     There is an implied right of action available to sellers under Section 22.1. *Channon*, 2021 IL (1st) 210176 at ¶ 27 ("[W]e hold that the necessary elements are satisfied to imply a private right of action in favor of a condominium unit seller charged an excessive or unreasonable fee to receive the documents or information required by section 22.1 of the Condominium Property Act.").

85. Sellers, such as Plaintiffs and Class members, are a class of persons Section 22.1 was enacted to protect from the harms caused by the charging of excessive fees for providing Section 22.1 documents.

86. Implying a private right of action is consistent with the underlying purpose of Section 22.1 because its provisions are enacted to protect both buyers and sellers. *See id.* ¶ 24 ("[Section 22.1] also protects unit sellers by specifying that the fee they may be charged to receive this information is a reasonable fee covering the direct out-of-pocket costs of providing such information and copying.").

87. Implying a private right of action is also necessary to provide sellers with an adequate remedy for violations of the fee provision of Section 22.1. *See id.* ¶ 26.

88. Defendants are liable as agents and subagents of Plaintiffs' and Class members' Condominium Associations. Defendants expressly undertook duties to provide the Section 22.1 documents on the Condominium Associations' behalf. As a result, Defendants were subject to Section 22.1's fee provision and were required to provide the documents only pursuant to, and in compliance with, Section 22.1, including the reasonable fee provision. *See id.* ¶ 31.

89. Defendants were the only parties from whom Plaintiffs and Class members could obtain the Section 22.1 documents.

90. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered injury and actual damage, including the amount of the fee they paid that exceeded Defendants' direct out-of-pocket costs for providing and copying the information and documents under Section 22.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class and RealManage Subclass, pray for an Order as follows:

     A.    Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class and the RealManage Subclass defined herein;

     B.    Designating Plaintiffs as representatives of the Class and the RealManage Subclass, and designating undersigned counsel as Class Counsel;

     C.    Entering judgment in favor of Plaintiffs and the Class and the RealManage Subclass, and against Defendants, jointly and severally;

     D.    Awarding Plaintiffs, Class members, and RealManage Subclass members all relief to which they are entitled, including awards for their actual damages, statutory damages, treble damages, enhanced damages, and punitive damages for Defendants' willful and intentional conduct;

     E.    Ordering equitable relief, including restitution, disgorgement of any of Defendants' ill-gotten gains and the proceeds of such, imposing a constructive trust in favor of Plaintiffs, Class members, and RealManage Subclass members over such proceeds, and awarding those amounts to Plaintiffs, Class members, and RealManage Subclass members;

     F.    Granting injunctive relief, including but not limited to, an order: (1) requiring Defendants to cease their unlawful, unfair, and deceptive practices; (2) requiring Defendants to implement and maintain adequate procedures for providing and copying Section 22.1 documents and information; and (3) requiring clear and prominent disclosures in Defendants' communications to condominium owners regarding fees associated with the provision of Section 22.1 documents and information;

     G.    Awarding Plaintiffs, Class members, and RealManage Subclass members attorneys' fees and costs, including interest thereon, as allowed or required by law; and

     H.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**
**(815 ILCS 505/1, *et seq.*)**
*(On Behalf of Plaintiffs, the Class, and the RealManage Subclass*
*and Against All Defendants)*

91.     Plaintiffs repeat and reallege paragraphs 1-79 as if fully set forth herein.

92.     The ICFA provides protection to consumers by mandating fair competition in commercial markets for goods and services.

93.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS 505/2.

94.     The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

95.     Defendants are each a "person," as defined by 815 ILCS 505/1(c).

96.     Plaintiffs and each Class member are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Defendants' goods and services when they paid fees for the Section 22.1 documents and information.

97.     Defendants' unfair and unlawful acts and practices in assessing, charging, and collecting excessive and unreasonable fees in connection with the provision of Section 22.1 documents and information constitute unfair and unlawful business practices because they offend public policy—as articulated in Section 22.1—and cause substantial injury to consumers.

98.     Plaintiffs and Class members have no reasonable alternatives to avoid Defendants' unfair and unlawful conduct because Defendants are the only source of the documents that Plaintiffs and Class members must provide when they sell their condominium units.

99.     Defendants' conduct is unfair and unlawful because it violated Section 22.1 of the Condominium Property Act, as alleged in Count I.

100.    Acting as reasonable consumers, had Plaintiffs and Class members been aware of the true facts regarding the excessive fees and if they had adequate time to dispute the fees in the course of performing all the tasks attendant to real estate sales, they would have refused to pay the excessive fee to Defendants.

101.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered injury and actual damage, including the amount of the fee they paid that exceeded Defendants' direct out-of-pocket costs for providing and copying the information and documents under Section 22.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class and RealManage Subclass, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class and the RealManage Subclass defined herein;

B.    Designating Plaintiffs as representatives of the Class and the RealManage Subclass, and designating undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and the RealManage Subclass, and against Defendants, jointly and severally;

D.    Awarding Plaintiffs, Class members, and RealManage Subclass members all relief to which they are entitled, including awards for their actual damages, statutory damages, treble damages, enhanced damages, and punitive damages for Defendants' willful and intentional conduct;

E. Ordering equitable relief, including restitution, disgorgement of any of Defendants' ill-gotten gains and the proceeds of such, imposing a constructive trust in favor of Plaintiffs, Class members, and RealManage Subclass members over such proceeds, and awarding those amounts to Plaintiffs, Class members, and RealManage Subclass members;

F. Granting injunctive relief, including but not limited to, an order: (1) requiring Defendants to cease their unlawful, unfair, and deceptive practices; (2) requiring Defendants to implement and maintain adequate procedures for providing and copying Section 22.1 documents and information; and (3) requiring clear and prominent disclosures in Defendants' communications to condominium owners regarding fees associated with the provision of Section 22.1 documents and information;

G. Awarding Plaintiffs, Class members, and RealManage Subclass members attorneys' fees and costs, including interest thereon, as allowed or required by law; and

H. Granting all such further and other relief as the Court deems just and appropriate.

## COUNT III
### Civil Conspiracy
*(On Behalf of Plaintiffs and the RealManage Subclass and Against All Defendants)*

102. Plaintiffs repeat and reallege paragraphs 1-79 as if fully set forth herein.

103. "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *E.g.*, *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2004).

104. Defendants conspired knowingly and entered into agreements, express or implied, between themselves to cause Plaintiffs and RealManage Subclass members harm in violation of the law.

105. Each Defendant furthered the goals of the conspiracy and facilitated the unlawful collection of excessive and unreasonable fees in violation of Illinois law, as alleged herein, including by engaging in the following acts:

a.  Coordinating with one another regarding the amount of fees to charge and agreeing to terms that would require sellers of condominium units in Condominium Associations managed by RealManage to use HomeWiseDocs to obtain documents and information, as opposed to allowing alternatives;

b.  Creating and issuing Paid Assessment Letters, like Plaintiffs' letters;

c.  Facilitating the payment, processing, and collection of unreasonable and excessive fees in violation of Illinois law;

d.  Sharing in the ill-gotten gains in amounts agreed to beforehand.

106.  As a direct and proximate result of Defendants' unlawful conspiracy, Plaintiffs and RealManage Subclass members have suffered injury and actual damage, including the amount of the fee they paid that exceeded Defendants' direct out-of-pocket costs for providing and copying the information and documents under Section 22.1.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the RealManage Subclass, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the RealManage Subclass defined herein;

B.  Designating Plaintiffs as representative of the RealManage Subclass and designating undersigned counsel as counsel for the RealManage Subclass;

C.  Entering judgment in favor of Plaintiffs and the RealManage Subclass and against Defendants, jointly and severally;

D.  Awarding Plaintiffs and RealManage Subclass members all relief to which they are entitled, including awards for their actual damages, statutory damages, treble damages, enhanced damages, and punitive damages for Defendants' willful and intentional conduct;

E.  Ordering equitable relief, including restitution, disgorgement of any of Defendants' ill-gotten gains and the proceeds of such, imposing a constructive trust in favor of Plaintiffs and RealManage Subclass members over such proceeds, and awarding those amounts to Plaintiffs and RealManage Subclass members;

F.  Granting injunctive relief, including but not limited to, an order: (1) requiring Defendants to cease their unlawful, unfair, and deceptive practices; (2) requiring Defendants to implement and maintain adequate procedures for providing and copying Section 22.1 documents and information; and (3) requiring clear and prominent disclosures in Defendants' communications to condominium owners regarding fees associated with the provision of Section 22.1 documents and information;

G.  Awarding Plaintiffs and the RealManage Subclass members attorneys' fees and costs, including interest thereon, as allowed or required by law; and

H.  Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV
### Unjust Enrichment
*(On Behalf of Plaintiffs, the Class, and the RealManage Subclass and Against All Defendants)*

107.  Plaintiffs repeats paragraphs 1-79 as if fully set forth herein.

108.  Plaintiffs and Class members conferred a benefit to Defendants by paying a substantial, excessive, and unreasonable fee for Section 22.1 documents and information.

109.  Defendants unlawfully and without justification knowingly retained and appreciated the benefits conferred by Plaintiffs and Class members, and it would be unjust to allow Defendants to retain the benefit at the expense and to the detriment of Plaintiffs and Class members.

110.  Allowing Defendants to retain the benefits of the unlawful conduct alleged herein would offend fundamental principles of justice, equity, and good conscience.

111.     As a direct and proximate result, Plaintiffs and Class members should be awarded a remedy in equity, including restitution, disgorgement, and imposing a constructive trust upon the proceeds of the funds retained and earned through Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class and RealManage Subclass, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class and the RealManage Subclass defined herein;

B.     Designating Plaintiffs as representatives of the Class and the RealManage Subclass, and designating undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiffs and the Class and the RealManage Subclass, and against Defendants, jointly and severally;

D.     Ordering equitable relief, including restitution, disgorgement of any of Defendants' ill-gotten gains and the proceeds of such, imposing a constructive trust in favor of Plaintiffs, Class members, and RealManage Subclass members over such proceeds, and awarding those amounts to Plaintiffs, Class members, and RealManage Subclass members;

E.     Awarding Plaintiffs, Class members, and RealManage Subclass members attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.     Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.


                              Plaintiffs KATHERINE M. ATKINS and ZANE
                              FULTON, individually and on behalf of all others
                              similarly situated,


                              By: /s/ Thomas A. Zimmerman, Jr.
                                   Thomas A. Zimmerman, Jr.

tom@attorneyzim.com
Sharon A. Harris
sharon@attorneyzim.com
Matthew C. De Re
matt@attorneyzim.com
Jeffrey D. Blake
jeff@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
Firm ID No. 34418

Rusty Payton
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Arthur C. Czaja
Law Office of Arthur C. Czaja
7521 N. Milwaukee Ave.
Niles, IL 60714
(847) 647-2106
arthur@czajalawoffices.com

Joseph S. Davidson
Law Offices of Joseph P. Doyle LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
(847) 985-1100
jdavidson@fightbills.com

Counsel for the Plaintiffs and the Putative Classes

# Paid Assessment Letter
## Turnberry Manor Condominium Association
## American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

## General Information

| | |
|---|---|
| This information is good through | 09-30-2021 |
| Is this account in collections? | No |
| What is the current regular assessment against the unit? | 250.52 |
| What is the frequency of the assessment charge? | Monthly |
| The regular assessment is paid through: | 08-31-2021 |
| The regular assessment is next due: | 10-01-2021 |

**Comments: The next regular assessment is due as stated assuming balance of Paid Assessment Letter is paid in full.**

**To ensure that the buyer has an account set up with management, please have the buyer and/or the buyer's attorney representative send in the closing documents immediately following the closing. Accepted closing documents include the closing disclosure and/or the recorded deed. Please send these required documents to closings@acmweb.com.**

| | |
|---|---|
| What day of the month are regular assessments due? | 1st |
| How many days after the due date is the regular assessment considered delinquent? | 15 |
| The penalty for delinquent assessments is: | $25.00 |

## Specific Fees Due To Turnberry Manor Condominium Association

| | |
|---|---|
| Closing agent is required to collect the following number of additional regular assessments at closing: | 0 |
| Assessment Data: | |
| Monthly Assessment ( Frequency: Monthly ) | $250.52 |
| Are there any current special assessments or governing body approved special assessments, against units within the association? If yes, a comment is provided. | No |
| Owner's current balance due (you may total the owners balance due using the breakdown below): | $295.52 |

| | |
|---|---|
| Monthly Assessment | $250.52 |
| Inspection | $45.00 |

## General Association Information

| | |
|---|---|
| Are there any violations against this unit? | No |

# Paid Assessment Letter
## Turnberry Manor Condominium Association
## American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**Comments: The Association has made no inspection and disclaims any responsibility for evaluating improvements or alterations made to the unit or the common elements assigned to the unit without its knowledge. Please be aware that upon sale/transfer the Buyer becomes liable for any/all items not in compliance.**

Is the association or the developer (if the project has not been turned over to the homeowners association) involved in any current or pending litigation? If yes, a comment is required. (Do not include neighbor disputes or rights of quiet enjoyment, litigation where the claim amount is known and the insurance carrier will provide defense and coverage, or where the HOA is named as a plaintiff in a foreclosure action or to collect past due assessments).　　　　Yes

**Comments: Turnberry Manor Condominium Association v. Joseph Farinella, et al. Case No.: 2021 CH 201-is a complaint for injunctive and other relief in which the Association seeks, among other things, a court order that dispossesses Lisa Farinella of her right to occupy the Unit and restrains her from returning to the Premises. The Lawsuit was filed on June 4, 2021 and the Defendants have yet to be served.**

## Insurance Information

| | |
|---|---|
| Insurance broker's or agent's company name: | Giacomo Manfredini |
| Identify the insurance agent's name: | Giacomo Manfredini |
| Insurance agent's phone number: | 708-482-7200 |
| Insurance agent's fax number: | 708-842-2299 |
| Insurance agent's email address: | gmanfredini@farmersagent.com |

*Lynn Mosier*

**Customer Care, Customer Care**　　　　　　**Date: 08-31-2021**

**American Community Management-IL**

**Phone: 630-620-1133**



## Paid Assessment Letter
### Turnberry Manor Condominium Association
### American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**Comments:**

**The association requires that the purchaser provides the management company with a certified copy of the HUD settlement statement and/or recorded deed along with the owner information form within ten days of the finalization of closing to update association records with the buyers information. Please send these documents to closings@acmweb.com.

The Association waives its Right of First Refusal.

Please have the Buyer return the Owner Information form to our office within ten days of the finalization of closing to update Association records with the Buyers information.

The documents that the Association requires be given to all new Buyers are available online at www.acmweb.com. Please be sure that the Buyers read the Declaration and Rules & Regulations since they will be expected to comply with these documents.

The buyer is hereby notified of their obligation to advise this office of the date this closing is actually effective. If the mailing address of the buyer will be different than the unit address, we must be notified immediately so that all correspondence to the buyer is directed to the correct mailing address. Lack of said notification does not relieve the buyer of the responsibility to make timely payments, nor will it invalidate any incurred late charges. It is the responsibility of the buyer to refer to the Rules and Regulations and/or Declarations and By-Laws of the association for any leasing procedures and/or restrictions that apply to this unit. Coupons for the buyer's convenience in making assessment payments will be issued only after notification of the closing has been received.

All monthly payments must be made payable to your Association and sent to our Payment Processing Center: P.O. Box 4748, Oak Brook, IL 60522-4748. A coupon book to make the monthly assessment payments will be ordered for the Buyer once the closing has been confirmed. It is the buyer's responsibility to pay the next monthly assessment prior to receiving a coupon book. When submitting a payment without a coupon or your individual account number, please make sure to include the property unit address on the memo line. Also, we offer Direct Debit as means of paying the monthly assessments.

# Paid Assessment Letter
## Turnberry Manor Condominium Association
## American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

## Fee Summary

**Amounts Prepaid**

| | | |
|---|---|---|
| | 22.1 and Paid Assessment Letter Bundle -SALES CONTRACT IS REQUIRED | $435.00 |
| | Convenience Fee | $6.00 |
| | Rush Fee | $50.00 |
| | **Total** | **$491.00** |

**Fees Due to American Community Management-IL**

| | | |
|---|---|---|
| | Transfer Fee (BUYER) | $265.00 |
| | **Total** | **$265.00** |

**Fees Due to Turnberry Manor Condominium Association**

| | | |
|---|---|---|
| | Owner Current Balance | $295.52 |
| | **Total** | **$295.52** |



# Paid Assessment Letter
## Turnberry Manor Condominium Association
## American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**PLEASE RETURN THIS FORM WITH YOUR CHECK AND CERTIFIED COPIES OF THE CLOSING DISCLOSURE FORM (FORMERLY THE HUD-1 FORM) AND THE GRANT OR WARRANTY DEED. PLEASE INDICATE CONFIRMATION NUMBER 5ML5BG867 ON THE CHECK TO ENSURE PAYMENT IS CREDITED PROPERLY.**

| Fees Due to American Community Management-IL | | |
|---|---|---|
| | Transfer Fee (BUYER) | $265.00 |
| | **Total** | **$265.00** |

| Fees Due to Turnberry Manor Condominium Association | | |
|---|---|---|
| | Owner Current Balance | $295.52 |
| | **Total** | **$295.52** |

**Include this confirmation number 5ML5BG867 on the check for $265.00 payable to and send to the address below.**

**American Community Management-IL**

**3041 Woodcreek Drive Suite 100**

**Downers Grove, IL 60515**

**Include this confirmation number 5ML5BG867 on the check for $295.52 payable to and send to the address below.**

**Turnberry Manor Condominium Association**

**3041 Woodcreek Drive Suite 100**

**Downers Grove, IL 60515**

# Paid Assessment Letter
## Turnberry Manor Condominium Association
## American Community Management-IL

**Property Information:**
314 Ashbury Ct Unit: Apt 7
Roselle, IL 60172-4769
Seller: Katharine Atkins
Buyer: Robert Zambetti

**Requestor:**
Czaja Law Offices
Joanna Puchlik
7521 N. Milwaukee Avenue
Niles, IL 60714
847-647-2106
czajalawoffices@gmail.com

## Buyer and Seller Contact Information

**Seller's New Address:**


Phone: 412-770-8470
Email: katiematkins@gmail.com

**Buyer's Address:**
420 Merimac Court
Roselle, IL 60172
Phone:
Email: rzambetti01@comcast.net
Is buyer occupant? Yes

## Closing Information

File/Escrow Number: H84099
Estimated Close Date: 09-03-2021
Homewise Confirmation Number: 5ML5BG867

Sales Price: 216,000
Closing Date:
Homewise Transaction ID: 6773302

## Status Information

Date of Order: 08-16-2021
Board Approval Date:
Order Complete Date: 08-31-2021
Date Paid: 08-16-2021

Order Retrieved Date:
Inspection Date:

## Community Manager Information

Company: American Community Management-IL
Completed By: Joanna Luna
Primary Contact: Customer Care
Address:
3041 Woodcreek Drive Suite 100
Downers Grove, IL 60515
Phone: 630-620-1133
Fax: 630-963-5189
Email: closings@acmweb.com

# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

## General Information

| | |
|---|---|
| This information is good through | 09-30-2021 |
| Is this account in collections? | No |
| What is the current regular assessment against the unit? | 323.42 |
| What is the frequency of the assessment charge? | Monthly |
| The regular assessment is paid through: | 08-31-2021 |
| The regular assessment is next due: | 10-01-2021 |

**Comments: The next regular assessment is due as stated assuming balance of Paid Assessment Letter is paid in full.**

**To ensure that the buyer has an account set up with management, please have the buyer and/or the buyer's attorney representative send in the closing documents immediately following the closing. Accepted closing documents include the closing disclosure and/or the recorded deed. Please send these required documents to closings@acmweb.com.**

| | |
|---|---|
| What day of the month are regular assessments due? | 1st |
| How many days after the due date is the regular assessment considered delinquent? | 15 |
| The penalty for delinquent assessments is: | 25.00 |

## Specific Fees Due To Williamsport Village Condominium Association

| | |
|---|---|
| Closing agent is required to collect the following number of additional regular assessments at closing: | 0 |
| Assessment Data: | |
| Monthly Assessment ( Frequency: Monthly ) | $323.42 |
| Are there any current special assessments or governing body approved special assessments, against units within the association? If yes, a comment is provided. | No |
| Owner's current balance due (you may total the owners balance due using the breakdown below): | $323.42 |
| Monthly Assessment (Sept) $323.42 | |

## General Association Information

| | |
|---|---|
| Are there any violations against this unit? | No |

# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**Comments: The Association has made no inspection and disclaims any responsibility for evaluating improvements or alterations made to the unit or the common elements assigned to the unit without its knowledge. Please be aware that upon sale/transfer the Buyer becomes liable for any/all items not in compliance.**

Is the association or the developer (if the project has not been turned over to the homeowners association) involved in any current or pending litigation? If yes, a comment is required. (Do not include neighbor disputes or rights of quiet enjoyment, litigation where the claim amount is known and the insurance carrier will provide defense and coverage, or where the HOA is named as a plaintiff in a foreclosure action or to collect past due assessments).    No

## Insurance Information

| | |
|---|---|
| Insurance broker's or agent's company name: | State Farm |
| Identify the insurance agent's name: | Nick Pitzer |
| Insurance agent's phone number: | 630-321-8900 |
| Insurance agent's fax number: | |
| Insurance agent's email address: | |

*Laurie Barker*

**Customer Care, Customer Care**

**American Community Management-IL**

**Phone: 630-620-1133**

**Date: 08-30-2021**



# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**Comments:**

**The association requires that the purchaser provides the management company with a certified copy of the HUD settlement statement and/or recorded deed along with the owner information form within ten days of the finalization of closing to update association records with the buyers information. Please send these documents to closings@acmweb.com.

The Association does not have the Right of First Refusal.

Please have the Buyer return the Owner Information form to our office within ten days of the finalization of closing to update Association records with the Buyers information.

The documents that the Association requires be given to all new Buyers are available online at www.acmweb.com. Please be sure that the Buyers read the Declaration and Rules & Regulations since they will be expected to comply with these documents.

The buyer is hereby notified of their obligation to advise this office of the date this closing is actually effective. If the mailing address of the buyer will be different than the unit address, we must be notified immediately so that all correspondence to the buyer is directed to the correct mailing address. Lack of said notification does not relieve the buyer of the responsibility to make timely payments, nor will it invalidate any incurred late charges. It is the responsibility of the buyer to refer to the Rules and Regulations and/or Declarations and By-Laws of the association for any leasing procedures and/or restrictions that apply to this unit. Coupons for the buyer's convenience in making assessment payments will be issued only after notification of the closing has been received.

All monthly payments must be made payable to your Association and sent to our Payment Processing Center: P.O. Box 4748, Oak Brook, IL 60522-4748. A coupon book to make the monthly assessment payments will be ordered for the Buyer once the closing has been confirmed. It is the buyer's responsibility to pay the next monthly assessment prior to receiving a coupon book. When submitting a payment without a coupon or your individual account number, please make sure to include the property unit address on the memo line. Also, we offer Direct Debit as means of paying the monthly assessments.

# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

## Fee Summary

**Amounts Prepaid**

| | | |
|---|---|---|
| | 22.1 and Paid Assessment Letter Bundle - SALES CONTRACT IS REQUIRED | $435.00 |
| | Convenience Fee | $6.00 |
| | Rush Fee | $50.00 |
| | **Total** | **$491.00** |

**Fees Due to American Community Management-IL**

| | | |
|---|---|---|
| | Transfer Fee (BUYER) | $265.00 |
| | **Total** | **$265.00** |

**Fees Due to Williamsport Village Condominium Association**

| | | |
|---|---|---|
| | Move Fee (BUYER) | $50.00 |
| | Move Fee (SELLER) | $50.00 |
| | Owner Current Balance | $323.42 |
| | **Total** | **$423.42** |

# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
847-647-2106
Estimated Closing Date: 09-03-2021

**PLEASE RETURN THIS FORM WITH YOUR CHECK AND CERTIFIED COPIES OF THE CLOSING DISCLOSURE FORM (FORMERLY THE HUD-1 FORM) AND THE GRANT OR WARRANTY DEED. PLEASE INDICATE CONFIRMATION NUMBER 7F7Q5WP8H ON THE CHECK TO ENSURE PAYMENT IS CREDITED PROPERLY.**

| Fees Due to American Community Management-IL | | |
|---|---|---|
| | Transfer Fee (BUYER) | $265.00 |
| | **Total** | **$265.00** |

| Fees Due to Williamsport Village Condominium Association | | |
|---|---|---|
| | Move Fee (BUYER) | $50.00 |
| | Move Fee (SELLER) | $50.00 |
| | Owner Current Balance | $323.42 |
| | **Total** | **$423.42** |

**Include this confirmation number 7F7Q5WP8H on the check for $265.00 payable to and send to the address below.**

**American Community Management-IL**

**3041 Woodcreek Drive Suite 100**

**Downers Grove, IL 60515**

**Include this confirmation number 7F7Q5WP8H on the check for $423.42 payable to and send to the address below.**

**Williamsport Village Condominium Association**

**3041 Woodcreek Drive Suite 100**

**Downers Grove, IL 60515**

# Paid Assessment Letter
## Williamsport Village Condominium Association
## American Community Management-IL

**Property Information:**
1244 Williamsport Dr Unit: Unit 3
Westmont, IL 60559-3070
Seller: Zane Fulton
Buyer: Natalie Koza

**Requestor:**
Czaja Law Offices
Joanna Puchlik
7521 N. Milwaukee Avenue
Niles, IL 60714
847-647-2106
czajalawoffices@gmail.com

## Buyer and Seller Contact Information

**Seller's New Address:**

Phone: 773-469-4851
Email: zfulton1079@gmail.com

**Buyer's Address:**

Phone: 630-696-1990
Email: nkozax3@gmail.com
Is buyer occupant? Yes

## Closing Information

File/Escrow Number: H84110
Estimated Close Date: 09-03-2021
Homewise Confirmation Number: 7F7Q5WP8H

Sales Price: 225,000
Closing Date:
Homewise Transaction ID: 6773943

## Status Information

Date of Order: 08-16-2021
Board Approval Date:
Order Complete Date: 08-30-2021
Date Paid: 08-16-2021

Order Retrieved Date:
Inspection Date:

## Community Manager Information

Company: American Community Management-IL
Completed By: Joanna Luna
Primary Contact: Customer Care
Address:
3041 Woodcreek Drive Suite 100
Downers Grove, IL 60515
Phone: 630-620-1133
Fax: 630-963-5189
Email: closings@acmweb.com